IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DONNA G.,[1] ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 8425 |
| v. ) | |
| ) | Magistrate Judge |
| ANDREW MARSHALL SAUL, ) | Maria Valdez |
| Commissioner of Social Security[2], ) | |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Donna G.'s claim for Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 9] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 19] is denied.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

[2] Andrew Saul has been substituted for his predecessor pursuant to Federal Rule of Civil Procedure 25(d).

# BACKGROUND

## I. PROCEDURAL HISTORY

In October 2013, Plaintiff filed a claim for DIB, alleging disability since June 30, 2012 due to fibromyalgia, short term memory loss, back pain, concentration deficits, speech trouble, asthma, environmental, food and drug allergies, fatigue, plantar fasciitis, chronic sinusitis, TMJ hearing loss, depression, anxiety, and chronic fatigue. Plaintiff later amended her alleged onset date to June 23, 2011. The claim was denied initially and upon reconsideration, after which Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), which was held on June 20, 2016. Plaintiff personally appeared and testified at the hearing and was represented by counsel. Vocational expert Ms. Mowry also testified.

On January 12, 2017, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. At step two, the ALJ

concluded that Plaintiff had the following severe impairments: degenerative disc disease, fibromyalgia, and depression. The ALJ concluded at step three that her impairments, alone or in combination, do not meet or medically equal a Listing. Before step four, the ALJ determined that Plaintiff retained the RFC:

> [T]o lift and/or carry up to 10 pounds occasionally and lighter weights frequently, and has no limitations in her ability to sit throughout an 8 hour workday. The claimant can stand and/or walk for ten continuous minutes, and for a total of two out of eight hours. The claimant needs to alternate her position between sitting, standing, and walking for no more than five minutes after being on her feet for 10 minutes or after sitting for 60. The claimant can occasionally climb ramps and stairs, and she can occasionally stoop, kneel, balance, crouch and crawl, but she can never climb ladders, ropes or scaffolds. The claimant is limited to working in non-hazardous environments, i.e., no driving at work, operating moving machinery, working at unprotected heights or around exposed flames and unguarded large bodies of water, and she should avoid concentrated exposure to unguarded hazardous machinery. The claimant is further limited to simple, routine tasks, work involving no more than simple decision-making, no more than occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. She is further precluded from work involving direct public service, in person or over the phone, although the claimant can tolerate brief and superficial interaction with the public which is incidental to her primary job duties. She is unable to work in crowded, hectic environments. The claimant can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks.

(R. 21.)

At step four, the ALJ concluded that Plaintiff had no past relevant work. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience and RFC, the ALJ concluded that Plaintiff could perform jobs existing in significant numbers in the national economy, leading to a finding that she is not disabled under the Social Security Act.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a Plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the Plaintiff presently unemployed? (2) Does the Plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the Plaintiff unable to perform her former occupation? and (5) Is the Plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step 3 or step 5 leads to a finding that the Plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step 3, precludes a finding of disability. *Id.* The Plaintiff bears the burden of proof at steps 1-4. *Id.* Once the Plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the Plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

4

## II. JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a Plaintiff, "he must build an accurate and logical bridge from the evidence to his conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

5

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a Plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

## III. ANALYSIS

Plaintiff alleges the following errors in the ALJ's decision: (1) the ALJ's discussion of the paragraph B criteria was inadequate to support the finding at step 3 that Plaintiff's severe depression did not equal a Listing; (2) the ALJ failed to properly evaluate Plaintiff's fibromyalgia in accordance with SSR 12-2p; (3) the ALJ failed to evaluate Plaintiff's testimony in accordance with SSR 16-3p; (4) the ALJ's RFC assessment failed to account for all of Plaintiff's limitations; (5) the ALJ erred in his evaluation of the medical opinion evidence; and (6) the ALJ improperly relied upon vague testimony from the VE to find that Plaintiff could perform other jobs in the national economy. The Court agrees with Plaintiff that the ALJ committed

harmful error in his evaluation of the opinion evidence, and the case must be remanded for that reason.

Plaintiff alleges that the ALJ erred in discounting an opinion rendered jointly by Plaintiff's treating therapist, Mr. Sada, and treating psychiatrist, Dr. Gibbons, both employed at Kenneth Young Center, where Plaintiff began treatment in 2009. The opinion was signed by Mr. Sada on July 14, 2015, and by Dr. Gibbons on August 27, 2015. The opinion states that Mr. Sada began treating Plaintiff on May 4, 2009, and Dr. Gibbons began treating Plaintiff on September 12, 2014, and opines significant mental limitations related to Plaintiff's diagnoses of Bipolar II Disorder and Dysthymic Disorder.

The ALJ treated the opinion entirely as that of Mr. Sada in assigning the opinion little weight, reasoning that Mr. Sada is not an acceptable medical source, Mr. Sada's opinion is inconsistent with his treatment notes, and Mr. Sada fails to provide specific examples of decompensation. The ALJ briefly mentions Dr. Gibbons at the end of the discussion, stating that "the claimant only started seeing Dr. Gibbons after her date last insured [of June 30, 2012] and therefore had no treating relationship with the claimant at the time of the date last insured." (R. 23.) However, the ALJ then "agree[s] with Mr. Sada and Dr. Gibbons that the claimant has moderate limitation in social functioning" and includes an appropriate limitation in the RFC. (*Id.*)

Only evidence from an acceptable medical source, such as a licensed physician, may be used "to establish the existence of a medically determinable

7

impairment," and only acceptable medical sources may render a medical opinion or be considered a treating source, whose opinion must be given controlling weight. Social Security Ruling, SSR 06-3p, 71 FR 45593-03, 2006 WL 2263437 (Aug. 9, 2006). An ALJ may consider evidence from other sources, such as therapists, social workers, nurse practitioners, or physician assistants, if their "special knowledge of the individual" allows them to "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." *Id.*

An ALJ must give controlling weight to a treating physician's opinion if the opinion is both "well-supported" and "not inconsistent with the other substantial evidence" in the case record. 20 C.F.R. § 404.1527(c);[3] *see Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). The ALJ must also "offer good reasons for discounting" the opinion of a treating physician. *Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) (internal quotations omitted); *Scott*, 647 F.3d at 739; *see also Israel v. Colvin*, 840 F.3d 432, 437 (7th Cir. 2016) ("A contradictory opinion of a non-examining physician does not, by itself, suffice as a justification for discounting the opinion of the treating physician."). The regulations require the ALJ to consider a variety of factors, including: (1) the length, nature, and extent of the treatment relationship;

---

[3] The Social Security Administration has modified the treating physician rule to eliminate the "controlling weight" instruction. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from your medical sources."). However, the new regulations apply only to disability applications filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Due to the date of Plaintiff's application in this case, the ALJ was required to apply the former treating physician rule.

(2) the frequency of examination; (3) the physician's specialty; (4) the types of tests performed; and (5) the consistency and support for the physician's opinion. *See* 20 C.F.R. § 404.1527(c).

The ALJ erred in failing to apply, or properly apply, the treating physician rule to Dr. Gibbons' opinion, and that error was not harmless. Dr. Gibbons signed this opinion, and the opinion is based on observations of both Dr. Gibbons and Dr. Gibbons' subordinate at Kenneth Young Center. The only reason the ALJ gave for discounting Dr. Gibbons' opinion is that the treating relationship began after the date last insured. However, the ALJ must consider medical evidence from after the disability period if it is relevant to the extent it reflects on the claimant's impairments during the disability period. *Jones v. Saul*, 823 F. App'x 434, 439 (7th Cir. 2020).

Here, Dr. Gibbons' opinion was that he agreed with the findings in treatment notes and medical evidence from during the disability period and beyond, from about 2009-2015, and Plaintiff's treatment at the Kenneth Young Center for mental impairments spanned much of that period. To the extent the ALJ was uncertain of the accuracy of Dr. Gibbons' findings because of the date on which Dr. Gibbons' treatment began versus the date on which Mr. Sada's treatment began, he should have consulted another medical expert. *See id.* ("If the ALJ questioned the accuracy of the retrospective medical evidence here, she should not have jumped to her own medical conclusion but instead should have consulted another medical expert to

9

assess how Jones's treatment postdate-last-insured 'related to other evidence in the record'") (quoting *McHenry v. Berryhill*, 911 F.3d 866, 871 (7th Cir. 2018)).

The ALJ also then went on to "agree with . . . Dr. Gibbons that the claimant has moderate limitation in social functioning" and include an appropriate limitation in the RFC. It is unclear why that limitation imposed by Dr. Gibbons is worthy of inclusion in the RFC, but the rest of his opined limitations are categorically unreliable due to the date Dr. Gibbons' treatment of Plaintiff started. On a similar note, despite the ALJ's clear finding that Dr. Gibbons' opinion is totally irrelevant because of the significance of the date last insured, the ALJ then found that Mr. Sada's opinion was unsupported in part because of treatment notes that post-dated the date last insured by over a year.

Furthermore, even if the opinion was only co-signed by Dr. Gibbons and Dr. Gibbons had no role in formulating the opinion itself, the ALJ should have treated the opinion as a treating physician opinion. *See, e.g., Gualano v. Commissioner of Social Security*, 415 F.Supp.3d 353, 361 (W.D.N.Y. Dec. 5, 2019) ("The government does not appear to dispute – nor should it – that the opinion should be assessed under the treating physician rule because Gualano's treating psychiatrist reviewed and cosigned the report."). The Commissioner argues that even if the opinion should be evaluated under the treating physician rule, the ALJ sufficiently evaluated it by sufficiently discussing the 20 C.F.R. § 404.1527(c) factors. However, the ALJ explicitly discussed the factors *only as to Mr. Sada*. The ALJ discounted Dr. Gibbons' opinion only because Dr. Gibbons did not begin seeing Plaintiff until after

10

the date last insured. The ALJ failed to sufficiently discuss the factors as to Dr. Gibbons and the case must be remanded for that reason.[4]

Based on its conclusion that remand is necessary for the above reasons, the Court need not explore in detail the remaining errors claimed by Plaintiff. The Court emphasizes that the Commissioner should not assume these issues were omitted from the opinion because no error was found. Indeed, the Court advises the Commissioner that, on remand, special care should be taken to ensure that the ALJ remedies any possible errors in the ALJ's decision.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 9] is granted in part and denied in part, and the Commissioner's cross-motion for summary judgment [Doc. No. 19] is denied. The Court finds that this matter should be remanded to the Commissioner for further proceedings consistent with this Order.

**SO ORDERED.**                  **ENTERED:**

**DATE:**   **March 4, 2021**

                                                 **HON. MARIA VALDEZ**
                                                 **United States Magistrate Judge**

---

[4] The ALJ's error was not harmless due to the significance of the mental limitations opined by Dr. Gibbons, any number of which may have changed the ALJ's decision as to the disabling effects of Plaintiff's mental impairments.

11